**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| THONG THUAN COMPANY LIMITED AND THONG THUAN CAM RANH SEAFOOD JOINT STOCK COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **Court No.  26-02456** |

**COMPLAINT**

1.      Plaintiffs Thong Thuan Company Limited ("TTCL") and Thong Thuan Cam Ranh Seafood Joint Stock Company ("TTCR") (collectively, "Plaintiffs" or "Thong Thuan"), by and through their attorneys, allege and state as follows:

**JURISDICTION**

2.      Plaintiffs bring this action pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(iii) to contest certain aspects of the final results of the administrative review of the antidumping duty ("AD") order on certain frozen warmwater shrimp from the Socialist Republic of Vietnam, Case No. A-552-802, covering a period of review ("POR") February 1, 2023 through January 31, 2024, issued by the United States Department of Commerce ("Commerce").  *See Certain Frozen Warmwater Shrimp From the Socialist Republic of Vietnam: Final Results of and Final Rescission of Review, in Part, of Antidumping Duty Administrative Review; 2023–2024*, 91 Fed. Reg. 8,429 (Dep't Commerce Feb. 23, 2026) ("*Final Results*"). The determinations, findings, and conclusions are set out primarily in the accompanying Issues and

1

Decision Memorandum.  *See* Memorandum from Scot Fullerton to Christopher Abbott, *Issues and Decision Memorandum for the Final Results of the 2023-2024 Antidumping Duty Administrative Review:  Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam* (Dep't Commerce Feb. 17, 2026) ("*Final IDM*").

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) because this action is commenced pursuant to 19 U.S.C. § 1516a.

## STANDING

4.      Plaintiffs are foreign producers and exporters of subject merchandise and are therefore interested parties within the meaning of 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3), and 28 U.S.C. § 2631(k)(1).

5.      Plaintiffs participated, through the submission of both factual information and legal argumentation, in the administrative review that gave rise to the contested *Final Results*. Plaintiffs were therefore "part{ies} to the proceeding" and are entitled to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

6.      On February 23, 2026, Commerce published in the *Federal Register* the *Final Results* of the 2023-2024 administrative review of the Frozen Warmwater Shrimp AD order.  91 Fed. Reg. at 8,429.

7.      Plaintiffs timely filed the Summons on March 24, 2026, and this Complaint is filed within 30 days of the filing of the Summons, pursuant to 19 U.S.C. § 1516a(2)(A), 28 U.S.C. § 2636(c), and Rules 3(a)(2) and 6(a) of the Rules of this Court.

## PROCEDURAL HISTORY

8.      On April 9, 2024, Commerce initiated an administrative review of the AD order on Frozen Warmwater Shrimp for the 2023-2024 POR.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 89 Fed. Reg. 24,780, 24,787 (Dep't Commerce Apr. 9. 2024).  On July 18, 2024, Commerce selected Thong Thuan for individual examination in this administrative review and issued an initial questionnaire to Thong Thuan.  Memorandum from Jonathan Schueler to Katie Marksberry, *Administrative Review of Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam:  Respondent Selection* (Dep't Commerce July 18, 2024).  From August 2024 through May 2025, Thong Thuan submitted timely responses to initial and supplemental questionnaires issued by Commerce, and factual information to value Thong Thuan's factors of production ("FOPs").

9.      On June 11, 2025, Commerce published its preliminary results in the *Federal Register*. *See Certain Frozen Warmwater Shrimp From the Socialist Republic of Vietnam: Preliminary Results, Notice of Intent To Rescind, in Part, and Final Rescission, in Part, of Antidumping Duty Administrative Review; 2023–2024*, 90 Fed. Reg. 24,583 (Dep't Commerce June 11, 2025). ("*Preliminary Results*").  Commerce calculated a weighted-average dumping margin of 0.00 percent for Thong Thuan.  *Id*. at 24,585.

10.     In its margin calculations, Commerce applied a freight surrogate value expressed in U.S. dollar per kilogram per kilometer to Thong Thuan's larvae input, even though the surrogate value for shrimp (FARM_SHRIMP_BREED) was denominated in Indian rupees per piece, consistent with Thong Thuan's reporting of FARM_SHRIMP_BREED (*i.e.*, pieces per kilogram of finished product).  Memorandum from Jonathan Schueler, *Analysis for the Preliminary*

*Results for Thong Thuan Company Limited and Thong Thuan – Cam Ranh Seafood Joint Stock Company* (Dep't Commerce June 5, 2025).

11.    On July 25, 2025, approximately one month after issuing the *Preliminary Results*, Commerce released a Post-Preliminary Analysis memorandum in which it revised its differential pricing analysis for Thong Thuan. *See* Memorandum from Kathleen Marksberry, *Antidumping Duty Administrative Review of Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam; 2023-2024: Post Preliminary Analysis* (Dep't Commerce July 25, 2025).

12.    Based on the revised differential pricing analysis and applying the same freight surrogate value used in the *Preliminary Results*, Commerce calculated a revised dumping margin of 0.99 percent for Thong Thuan. *See* Memorandum from Jonathan Schueler, *Post-Preliminary Analysis Memorandum for Thong Thuan Company Limited and Thong Thuan – Cam Ranh Seafood Joint Stock Company* (Dep't Commerce July 25, 2025).

13.    On September 1, 2025, Commerce began verification of Thong Thuan. Memorandum from Jonathan Schueler, *Verification of the Questionnaire Responses of Thong Thuan Company Limited and Thong Thuan – Cam Ranh Seafood Joint Stock Company in the Antidumping Review of Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam* (Dep't Commerce Sept. 17, 2025). On the first day of verification, Thong Thuan presented minor corrections. *Id.* at 1. Commerce ultimately determined that none of the errors related to Thong Thuan's factors of production reporting were minor and terminated verification on the third day after completing the sales section of Commerce's verification agenda. *Id.* at 2. By doing so, Commerce rejected examining the underlying source documents for the proposed corrections and thereby, failed to verify the accuracy of the minor corrections. *Id.*

14.    Commerce cited the "significant impact" that the proposed minor corrections would have had on the company's FOP reporting methodology as the basis for rejecting those corrections and terminating verification. *Id.* at 1-2. As a result, Commerce accepted only four of Thong Thuan's twelve proposed minor corrections. *Id.*at 2.

15.    On November 17, 2025, Thong Thuan filed its case brief. *See* Letter from Akin Gump Strauss Hauer & Feld LLP to Sec'y of Commerce, *Frozen Warmwater Shrimp from the Socialist Republic of Vietnam: Thong Thuan Case Brief* (Nov. 17, 2025). In its case brief, Thong Thuan argued that (1) Commerce's decisions to reject Thong Thuan's minor corrections and prematurely terminate verification were unreasonable; (2) Commerce should use neutral facts available considering Thong Thuan's cooperation throughout the review, and (3) Commerce must rely on rates previously calculated for companies receiving separate-rate status if Commerce resorted to determining a rate for Thong Thuan based on facts available . *Id*. at 5-15 and 17-28.

16.    On December 9, 2025, Thong Thuan filed a rebuttal brief responding to arguments raised in Petitioners' case briefs. *See* Letter from Akin Gump Strauss Hauer & Feld LLP to Sec'y of Commerce, *Fresh Warmwater Shrimp from the Socialist Republic of Vietnam: Thong Thuan Rebuttal Brief* (Dec. 9, 2025). In its rebuttal brief, Thong Thuan argued that Commerce should, in its *Final Results*, reject Petitioners' proposed rates based on the use of adverse facts available ("AFA") but rather use neutral facts available and rates previously calculated for separate-rate status companies. *Id*. at 2-8.

17.    On February 23, 2026, Commerce published its *Final Results* in the *Federal Register*. In the *Final Results*, Commerce made a couple of changes since the *Preliminary Results*. Specifically, Commerce applied total AFA to determine the weighted-average dumping margin

for Thong Thuan. *Final IDM* at 8. It used the highest weighted-average dumping margin determined in the underlying investigation—the estimated weighted-average dumping margin for the Vietnam-wide entity. *Final IDM* at 8, 26. Commerce reasoned that application of AFA was warranted because Thong Thuan failed to cooperate to the best of its ability, demonstrated by the "severe and widespread" errors amounting to "inattentiveness and carelessness." *Id.* at 18-19.

## STATEMENT OF CLAIMS

18.     In the following respects, and for other reasons apparent from the administrative record of Commerce's administrative review of the AD order on certain frozen warmwater shrimp, the *Final Results* are unsupported by substantial evidence and otherwise not in accordance with law.

## COUNT ONE

19.     Paragraphs 1 through 18 are hereby incorporated by reference.

20.     Commerce's decisions to reject all of Thong Thuan's FOP-related minor corrections and prematurely terminate verification were unsupported by substantial evidence and otherwise not in accordance with law, as they stemmed from Commerce's misunderstanding and mischaracterization of the company's data and the significance of the errors.

21.     Contrary to Commerce's assumptions, the errors presented by Thong Thuan during verification were readily correctable and verifiable and had no material impact on the overall dumping margin.

## COUNT TWO

22.     Paragraphs 1 through 21 are hereby incorporated by reference.

23.     Commerce's decision to apply AFA in calculating Thong Thuan's margin is unsupported by substantial evidence and is otherwise not in accordance with law. The record demonstrates that Thong Thuan complied with Commerce's requests for information to the best of its ability

by timely responding to questionnaires and fully cooperating during verification.  The errors that prompted Commerce to terminate verification were voluntarily disclosed by Thong Thuan at the outset of verification, and virtually all of the corrective information was already on the record.

24.     Both the Federal Circuit and the Court of International Trade have repeatedly rejected applications of AFA where the resulting rate is punitive in nature rather than appropriately designed to encourage cooperation.  *See, e.g.*, *Oman Fasteners, LLC v. United States*, 125 F.4th 1068, 1086-87 (Fed. Cir. 2025); *Nat'l Nail Corp v. United States*, 390 F. Supp. 3d 1356, 1384 (Ct. Int'l Trade 2019).  Nothing in the record indicates that Thong Thuan was uncooperative or that application of AFA was needed to encourage Thong Thuan to cooperate.  Thus, Commerce's rationale for applying AFA was purely punitive.

### COUNT THREE

25.     Paragraphs 1 through 24 are hereby incorporated by reference.

26.     Even assuming *arguendo* that Commerce's application of total AFA were warranted, the AFA rate assigned to Thong Thuan is unsupported by substantial evidence and otherwise not in accordance with law.

27.     Commerce erred in relying on the estimated weighted-average dumping margin for the Vietnam-wide entity.  Thong Thuan operates independently of Vietnamese government control and therefore qualifies for a separate rate.

28.     Given that the rates calculated for separate-rate companies—including Thong Thuan in prior reviews—have historically been very low, the use of Vietnam-wide entity rate, which is more than double any previously calculated rate, fails to account for Thong Thuan's demonstrated cooperation with Commerce in this review.

## COUNT FOUR

29. Paragraphs 1 through 28 are hereby incorporated by reference.

30. If the Court concludes that the application of AFA was unwarranted and directs Commerce to calculate a dumping margin for Thong Thuan, Commerce must correct its error in calculating Thong Thuan's freight surrogate value. By using a surrogate value denominated in dollars per kilogram per kilometer rather than pieces per kilogram per kilometer, Commerce effectively assumed that each shrimp larvae weighed one kilogram, contrary to record evidence which demonstrated that the average weight of shrimp larvae was 0.0000021 kg. This error substantially overstated the freight expense attributable to Thong Thuan's larvae input, which resulted in the erroneous 0.99 percent dumping margin calculated in Commerce's Post-Preliminary Analysis.

## DEMAND FOR JUDGMENT AND RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

31.    Hold Commerce's *Final Results* described herein are not supported by substantial evidence on the record and are otherwise not in accordance with law;

32.    Remand this matter for Commerce to issue *Final Results* consistent with the final opinion and order of this Court; and

33.    Provide such further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Matthew R. Nicely
Matthew R. Nicely
Daniel M. Witkowski
Sung Un K. Kim
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K St NW
Washington, D.C. 20006
Tel: (202) 887-4046
*Counsel for Thong Thuan Company Limited and Thong Thuan Cam Ranh Seafood Joint Stock Company*

Dated: April 22, 2026

9